# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SPARTA INSURANCE COMPANY,** | * |
| | * |
| **Plaintiff,** | * |
| | *   **CIVIL ACTION NO.** |
| **vs.** | * |
| | * |
| **ALABAMA TERMITE & PEST** | * |
| **CONTROL, INC, as well as its principal,** | * |
| **KENNETH ESTES, and RONNIE and** | * |
| **SHEILA JONES** | * |
| | * |
| **Defendants.** | * |

## PETITION FOR DECLARATORY JUDGMENT

## PARTIES

1.      The Plaintiff, SPARTA Insurance Company (hereinafter "SPARTA"), is a company incorporated and organized under the laws of the State of Connecticut, having its principal place of business in Hartford, Connecticut.

2.      Defendant, Alabama Termite & Pest Control, Inc. (hereinafter "ATPC"), is a domestic company incorporated and organized under the laws of the State of Alabama, having its principal place of business in Bessemer, Alabama.

3.      Defendant, Kenneth Estes, ATPC's principal, is an adult citizen of the state of Alabama and resides at 3865 Lee Roy Lane; Bessemer, Jefferson County, Alabama 35022.

4.      Defendants, Ronnie and Sheila Jones, are individuals and citizens of the State of Alabama, and their home is located at 5705 Lazy Brooke Court; Pinson, Jefferson County, Alabama 35126.

1

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and the Declaratory Judgment Act, 28 U.S.C. § 2201, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there exists complete diversity of citizenship among the Plaintiff and Defendants.

6. In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F. 3d 805, 807 (11th Cir. 2003). "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Where an insurer seeks a determination that it has no duty to defend a separate underlying lawsuit, the court may take into account not only the recovery sought in the underlying lawsuit, but also "[t]he pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount." *Emplrs. Mut. Cas. Co. v. Huff*, 2017 U.S. Dist. LEXIS 122679, at *6 (N.D. Ala. Aug. 22, 2017) (quoting *Stonewall Ins. Co. v. Lopez*, 544 F. 2d 198, 199 (5th Cir. 1976)).

7. The policy at issue in this declaratory judgment action provides a per occurrence liability limit of $1,000,000.00, which is inclusive of damages and the costs of defense. The amount claimed as damages by the Joneses (Plaintiff in the underlying action in the Circuit Court of Jefferson County, Alabama), together with the projected costs of defending ATPC, exceed the statutory threshold of $75,000.00, exclusive of costs, attorneys' fees and interest. *See Huff*, 2017 U.S. Dist. LEXIS 122679, at *6 (holding that the amount in controversy includes the cost of defense and indemnification arising from the underlying claim).

8.Venue is proper in the United States District Court for the Northern District of Alabama, Birmingham Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. For instance, the Joneses' home, which is the subject of the underlying proceedings, and ATPC's principal place of business are both located in Jefferson County, Alabama. Furthermore, the underlying state court action was filed in the Circuit Court of Jefferson County, Alabama.

## FACTUAL ALLEGATIONS

### A. General Background

9.This matter involves insurance coverage questions arising out of a state court lawsuit filed by Ronnie and Sheila Jones against ATPC.[1]

10.SPARTA provided ATPC with general liability insurance coverage from March 12th, 2010 to March 12th, 2012.

11.SPARTA is currently providing ATPC and its principal, Kenneth Estes, a defense pursuant to a strict reservation of rights.

12.This is a declaratory judgment action to determine whether SPARTA has any duty to defend or indemnify ATPC in the underlying state court action.

13.Based on the allegations of the Joneses' complaint, the timing of their alleged damages, the applicable law, and the language of SPARTA's policies, SPARTA contends that no coverage exists. Accordingly, SPARTA is seeking an adjudication that it does not owe ATPC a duty to defend or indemnify against the Joneses' underlying state court claims.

---

[1] The Joneses' complaint is attached hereto as Exhibit "A".

**B. Allegations of the Claimants' Complaint**

14. The underlying state court action stems from alleged termite damage to the home of Ronnie and Sheila Jones.

15. In June of 2007, the Joneses signed a termite treatment contract with ATPC. Under the contract, ATPC promised to "puncture all hollow masonry work and pressure treat same with toxic chemical. (3) Void or drill or road all earth adjoining building and poison soil. (4) Drill or rod concrete slab floors and inject chemical barrier as needed."

16. Thereafter, ATPC maintained a termite treatment and protection bond on the Joneses' residence for the following eight (8) years, until the Joneses allowed the bond to lapse in June of 2015.

17. Pursuant to the termite bond, ATPC conducted annual inspections on the Joneses' property, making spot treatments whenever necessary.

18. According to ATPC's limited records, wood rot was found on the Joneses' residence in 2008 and 2009.

19. After discovering some wood damage in the siding of their home, the Joneses filed a consumer complaint with ATPC on or around July $2^{nd,}$ 2013. On the heels of their complaint, ATPC sent an employee out to their home to inspect the damage. ATPC's inspection notes state that the damage was not caused by termites, but instead, was caused by ants and rot.

20. Around this time, the ADAI began investigating ATPC. The investigation resulted in the ADAI ordering ATPC in September of 2013 to evaluate their professional services accounts, including those for subterranean termite control, to ensure compliance with the Alabama Administrative Code.

21.     The Joneses claim to have learned of the ADAI's order for the first time in May of 2015, during which time Mr. Jones was called to testify as a witness in arbitration proceedings against ATPC.

22.     Upon learning of the ADAI's investigation and order, the Joneses allowed their termite bond with ATPC to lapse the following month in June of 2015.  The Jones also filed a complaint with the Alabama Department of Agriculture and Industries ("ADAI"), which sent an inspector to their home on June 10th, 2015.  According to the ADAI's Structural Pest Inspection Report ("SPIR"), the inspector found no visible activity of subterranean termites.  However, the SPIR did note that a "small unscraped termite tube was observed on the interior basement wall adjacent to the front porch area," as well as a "small amount of brown rot."  Notably, the SPIR indicated that numerous "mechanics of subterranean termite treatment" were not observed on the Joneses' residence.

23.     As a result of the SPIR findings, the ADAI directed ATPC to return to the property and address the issues raised in the SPIR via a letter dated July 13th, 2015.

24.     On August 11th, 2015, ATPC apparently returned to the property, drilled brick and block, and retreated the home.

24.     Notwithstanding the August of 2015 retreatment, the ADAI instructed ATPC to return to the Joneses' residence via a letter dated December 11th, 2015.

25.     The Joneses contend a subsequent inspection by the ADAI in September of 2016 "found that [ATPC] had failed to trench and treat the perimeter of the home or drill the basement slab and left drill holes in the basement unplugged."

26.     The Joneses filed suit against ATPC in the Circuit Court for Jefferson County, Alabama on November 15th, 2016.

27. The Joneses allege claims for Fraudulent Misrepresentation/ Suppression, including Promissory Fraud, Negligence, Recklessness, and Negligence Per Se, Negligent Hiring, Training, Supervision, and Retention, Breach of Contract, Civil Conspiracy, and Equitable Relief pursuant to the "Made Whole Doctrine." The Joneses seek to recover compensatory damages, including mental anguish, punitive damages, equitable relief, and other damages.

28. **Notably, the Joneses' state court complaint does not allege that any termite-related property damage has actually been found on their property.** Rather, the Joneses allege that "there is an unknown amount of termite damage present in the home" and "[d]estructive exploration is required to determine the full extent of the damage."

## THE INSURANCE POLICIES

29. SPARTA issued two policies to ATPC with policy periods from March 12, 2010 through March 12, 2011,[2] and March 12, 2011 through March 12, 2012.[3]

30. The policies are nearly identical to one another. In fact, the only material difference is the 2011-2012 includes the Property Damage Extension for Inspections endorsement, whereas the 2010-2011 policy does not.

31. Each policy provides $1,000,000.00/occurrence for Bodily Injury and Property Damage Liability and a general aggregate limit of $3,000,000.00.

32. The following provisions and endorsements are relevant to this analysis:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

---

[2] Policy 011GL00980, attached hereto as Exhibit "B".
[3] Policy 011GL02035, attached hereto as Exhibit "C".

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and

        **(2)**    Our right and duty to defend ends when we have used up the applicable limits of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

[…]

    **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**    Reports, all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

[…]
**2.**    **Exclusions**
This insurance does not apply to:
**a.  Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the

7

insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[…]

**j. Damage To Property**

"Property damage" to:

[…]

    **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

[See Exhibit B at p. 12, Exhibit C at p. 14].

# PROPERTY DAMAGE EXTENSION FOR TREATMENT/RENEWAL

**A.   COVERAGE**

    **1.   Insuring Agreement**

We will pay, those sums which the insured becomes legally obligated to pay as damages because of "property damage" to "real property", caused by the infestation of: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the "treatment contract", for such services, which occurs after the "actual treatment" and to which this insurance applies.

The amount we will pay as damages is limited as described in paragraph **B**. of this endorsement.

This replaces and is not in addition to any other "property damage" coverage that might apply under this policy.

    **2.   Exclusions**

This insurance does not apply to:

    **a.** The expense of treatment, retreatment, inspection or re-inspection of any "real property".

    **b.** Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.

    **c.** Any "property damage" occurring before the "actual treatment" date as shown in your "treatment contract" or after the end of the policy period.

>   d.  Any "property damage" not caused by: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or other insects identified in the "treatment contract".
>   e.  Any spot or partial treatments.
>   f.  Any "property damage" to "real property" that has not had a "renewal inspection" within twenty four (24) months of your last "renewal inspection" or "actual treatment".

**B.   LIMITS OF INSURANCE**

This coverage is subject to the Each Occurrence and General Aggregate Limits shown in the Declarations of this policy and is included within, not in addition to, the policy limits.
[…]

**E.**   For the purposes of coverage provided by this endorsement, the following conditions are added to **Section IV - Commercial General Liability Conditions**. Coverage is effective only if all of the following conditions are met:

>   1.  You must complete a graph showing the areas of the "real property" illustrating treated and, untreated areas, the dimensions of the structure(s) or building(s), present and past infestation, and present and past damage. The graph must be attached to the "treatment contract."
>
>   2.  You must charge a fee for your services.
>
>   3.  Nothing in the "Treatment Contract" shall extend or broaden the scope of coverage afforded by this endorsement.
>
>   4.  You must maintain the "treatment contract" and all the written, detailed records of any and all work performed by you from the date the "actual treatment" started.
>
>       We may examine your "treatment contract" and all information regarding the "actual treatment" and the "renewal inspection" of the "real property" at any time after the date of "actual treatment".
>
>       Failure to maintain such records; including but not limited to the "Treatment Contract", information regarding the "actual treatment" of the "real property", any report required by statute, ordinance or regulation of any federal, state or local government, or other pertinent information regarding the "actual treatment" of the "real property"; and/or not make them available to us will result in the denial of coverage for any claim or suit.
>
>   5.  All contracts must be in writing and signed by you and your client. All work papers must contain the date(s) of all actions taken with respect to the "real property".

[See Exhibit B at pp. 32 to 33, Exhibit C at pp. 43 to 44].

9

## COUNT I

### SPARTA DOES NOT OWE ATPC OR KENNETH ESTES A DEFENSE OR INDEMNITY FOR ANY CLAIMS ARISING OUT OF THE JONESES' UNDERLYING STATE COURT ACTION

33.     SPARTA incorporates paragraphs 1-32 as if fully set forth herein.

34.     SPARTA asserts there is no insurance coverage afforded under any policy of insurance issued to ATPC by SPARTA for the claims and damages at issue in the underlying state court proceedings.  A review of the Joneses' complaint, as well as the evidence gathered to date, reveals numerous coverage issues.  As a result of the Joneses' allegations and the applicable policy language, the claims and resulting damages in the underlying state court action are not covered by the SPARTA policies.

35.     First, the Joneses' complaint asserts claims for "bodily injury" in the form of "mental anguish."  Presumably, the Joneses' mental anguish claims are derivative of their termite-related "property damage" claims.  However, based on the Joneses' complaint, they have not actually discovered any termite-related "property damage" to date.  Moreover, assuming that their earliest discovery of wood damage in June of 2013 was caused by termites, the Joneses' "bodily injury" claims manifest outside of SPARTA's final policy period, which lapsed on March 12th, 2012.  Accordingly, the Joneses' "bodily injury" claims are not covered under either of ATPC's SPARTA policies.

36.     Second, none of the Property Damage Extension endorsements provide coverage for the Joneses' "property damage" claims. Specifically, the Joneses' allegations and underlying evidence establish that:

a. ATPC inspected the Joneses' home in conjunction with the warranties and guarantees made in its termite treatment and protection bonds with the Joneses;

b. Given that no termite-related "property damage" has been discovered to date, there is no evidence that ATPC, or any other insured, failed to "identify the present or past existence of 'wood destroying organisms' in the area(s) [ATPC] inspected on the date [ATPC] inspected the 'real property' or 'property damage' existing prior to the inspection, described in the 'inspection contract'";

c. No "Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the 'treatment contract'" were in existence at the time ATPC performed its inspections during the SPARTA coverage period;

d. No "property damage" caused by "Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the 'treatment contract'" existed at the time of, or prior to, ATPC's inspections of the Joneses' property during the SPARTA coverage period;

e. No "property damage" caused by "Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the 'treatment contract'" was visible, accessible and in existence at the time of ATPC's inspections during the SPARTA coverage period;

  f.  The Joneses' complaint alleges fraudulent, dishonest, and/or malicious purpose or intent on the part of ATPC;

  g.  ATPC failed to create and/or retain documents and records required by the policies, which is a violation of several conditions precedent to coverage under the various policy endorsements;

  h.  The documents created by ATPC failed to include the necessary information, signatures, and other requirements, as set out by the conditions precedent to coverage under the various policy endorsements;

  i.  Any alleged "property damage" occurred after the expiration of SPARTA's latest policy period;

37. Additionally, some or all of the allegations against ATPC and Estes do not amount to an "occurrence," as that term is defined by the policies and applicable law. Specifically, claims of intentional conduct do not meet the definition of an "occurrence." Likewise, at least a portion of the alleged damages sought by the Joneses do not amount to "bodily injury" or "property damage," including but not limited to, any claim for equitable relief. To the extent that the Joneses seek damages for "bodily injury" or "property damage" caused by an occurrence during the policy periods mentioned above, there is no coverage available under the SPARTA policies issued to ATPC.

38. The exclusions set out above may also exclude some or all of the damages sought by the Joneses in the underlying state court action, including, but not limited to, the "Damage to Property" and the "Expected or Intended Injury" exclusions.

39. Finally, the entirety of both policies, including, but not limited to, any applicable definitions, are hereby incorporated by reference and are attached hereto as Exhibits "B" and "C".

**WHEREFORE, PREMISES CONSIDERED,** SPARTA seeks a declaration from this Court as follows:

A. That a bona fide, justiciable controversy exists between the parties which should be resolved;

B. That the subject SPARTA policies, and all amendments, provisions, endorsements and exclusions are clear and unambiguous;

C. That SPARTA does not have a duty to defend or indemnify ATPC or Kenneth Estes for any of the underlying claims alleged by Ronnie and Sheila Jones; and

D. Granting SPARTA such other, further, and different relief to which it may be entitled.

**Respectfully Submitted,**

/s/ Allan S. Jones
ALLAN S. JONES (ASB-4458-E37A)
Attorney for SPARTA Insurance Company

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, AL 35216
asjones@carrallison.com
T:  (205) 822-2006
F:  (205) 822-2057

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AT**:

Alabama Termite and Pest Control, Inc.
1800 Fourth Ave. Southwest
Bessemer, AL 35022

Kenneth Neal Estes
3865 Lee Roy Lane
Bessemer, AL 35022

Ronnie and Sheila Jones
5705 Lazy Brooke Court
Pinson, Alabama 35126